**MILGARD TEMPERING, INC.,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**SELAS CORPORATION OF AMERICA,**
**a foreign corporation,**
**Defendant-Appellee-Cross-Appellant.**

**Nos. 84–4025, 84–4056.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 1, 1985.

Decided May 22, 1985.

As Amended May 24, 1985.

J. Richard Creatura, Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, Tacoma, Wash., for plaintiff-appellant-cross-appellee.

Edward M. Lane, Johnson, Lane & Gallaher, Tacoma, Wash., for defendant-appellee-cross-appellant.

Before WRIGHT, KENNEDY and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case presents the question whether a consequential damages limitation justified summary judgment for defendant-seller when the limited remedy of repair and replacement allegedly failed of its essential purpose. We hold that it did not and remand for trial.

FACTS:

Milgard Manufacturing, Inc. cuts and installs glass for use in residential and commercial construction. In 1979, it negotiated a contract with Selas Corporation of America to purchase a sophisticated glass tempering furnace. With Selas' consent, this contract was assigned to plaintiff, Milgard Tempering, Inc. Negotiations, conducted with the assistance of counsel for both parties, culminated in a detailed purchase contract.

Selas contracted to design and manufacture a complex horizontal batch tempering system, for a purchase price of $1,450,000 with a $50,000 bonus if "all major components required to erect and install the equipment [were] delivered to purchaser by January 31, 1980." Contract § 29.0. Milgard agreed to assemble the furnace on site, with Selas assisting with the start up and adjustment for testing. Selas retained a security interest in the furnace to insure payment.

The furnace was placed in commercial production in July 1980 without preacceptance testing as required by section 25.0 of the contract. Milgard immediately began to have problems with the system. Selas attempted to repair it but was unable to satisfy Milgard.

In January 1982, Milgard sued Selas alleging that the system was still not operating in accordance with the contract, notwithstanding Selas' extensive efforts to remedy the problems. Pursuant to negotiations, Milgard agreed to dismiss its action without prejudice and Selas undertook to operate the equipment and reimburse Milgard for operating losses during a two-month period, the losses amounting to $229,926.33.

The parties disagreed as to Selas' success in bringing the furnace system into compliance with contract specifications and Milgard sued again in March 1983. Its complaint sought relief based on "breach of contract, product liability and breach of express and implied warranty."

Selas moved for summary judgment on these issues: (1) whether a contractual bar to "consequential damages [was] enforceable as a matter of law, thereby precluding plaintiff's claim for damages; (2) [w]hether [Selas was] entitled to ... $179,417.00 plus statutory interest as the outstanding balance due ..." and (3) whether the parties had previously settled their dispute through an accord and satisfaction.

The district court granted summary judgment for Selas. It ruled that section 28.5 of the contract,[1] which excluded Selas'

1. 28.5 Liability
In the event of a breach of any warranty, express, implied or statutory, or in the event the equipment is found to be defective in workmanship or material or fails to conform to the specifications thereof, our liability shall be limited to the repair or replacement of such equipment as is found to be defective or non-conforming, provided that written notice of any such defect or non-conformity must be given to Selas within 1 year from date of acceptance, or 15 months from completion of shipment, whichever first occurs. In the event that acceptance is delayed through the fault of Selas, then the Selas 1 year warranty shall be applicable and not begin until the date of acceptance. Selas assumes no liability for consequential or incidental damages of

liability for consequential damages, was enforceable as a matter of law since the risk allocation provisions were the result of negotiations between sophisticated parties and their counsel. The court held further that the parties had reached an "[a]ccord and satisfaction" rendering the damage provisions of Wash.Rev.Code 62A.2–717 (1983)[2] inapplicable. The court was apparently referring to the terms of the agreement under which the first lawsuit was dropped.

The court awarded Selas $129,417 plus statutory interest, representing the balance of the purchase price, less the delivery bonus. Subsequently, the court awarded Selas $66,222.58 in attorneys' fees under section 28.1(f) of the contract, but denied recovery for time spent by Selas' in-house counsel in actively litigating the case.[3]

Milgard appeals the summary judgment and award of attorneys' fees while Selas cross-appeals summary judgment on the delivery bonus and the failure to award attorneys' fees for in-house counsel.

ANALYSIS:

## I. Standard of Review

We review "[a]n appeal from an order granting or denying a summary judgment ... de novo." *Alaska v. United States,* 754 F.2d 851, 853 (9th Cir.1985). "All 'evidence and factual inferences' must be viewed in the light most favorable to the adverse party and the summary judgment may be upheld only if 'there are no genuine issues of material fact and [the movant is] entitled to judgment as a matter of law.'" *Id.* (quoting *Martino v. Santa Clara Valley Water Dist.,* 703 F.2d 1141, 1145 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983)).

Federal law governs the appropriateness of summary judgment under Fed. R.Civ.P. 56(c). However, Washington law governs the substantive issues in this diversity action. *Bank of California, N.A. v. Opie,* 663 F.2d 977, 980 (9th Cir.1981). We review district court interpretations of state law *de novo. In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

## II. Consequential Damages

### A. Unconscionability

The contract limited Milgard's remedies in the event of breach of warranty to repair or replacement of the defective equipment. *See* Contract § 28.5, note 1 *supra.* Under Wash.Rev.Code § 62A.2–719(3) (1983), consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.[4] The limitation is prima

any kind (including fire or explosion in the starting, testing, or subsequent operation of the equipment), and the Purchaser assumes all liability for the consequences of its use or misuse by the Purchaser or his employees. In no event will Selas be liable for damages resulting from the non-operation of Purchaser's plant, loss of product, raw materials or production as a result of the use, misuse or inability to use the equipment covered by this proposal or from injury to any person or property alleged to be caused by or resulting from the use of the product produced with the equipment to be supplied to Purchaser by Selas pursuant to this proposal whether the customer or Purchaser is mediate or immediate. Purchaser hereby releases us of and from and indemnifies us against, all liability not specifically assumed by us hereunder.

2. **62A.2–717 Deduction of damages from the price**
The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

3. Section 28.1(f) of the Contract provides that:
Purchaser will pay all expenses (including the reasonable fees and expenses of legal counsel for Selas) in connection with the enforcement of Selas' rights as a secured party hereunder.

4. Section 62A.2–719 in its entirety provides:
**Contractual modification or limitation of remedy**
(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

facie conscionable when commercial parties are involved. *Id.*

The district court noted that the consequential damage limitation was the result of "arms length negotiations through competent, experienced counsel," and held that it was conscionable and enforceable as a matter of law. However, unconscionability at the outset is not the only limit on enforcement of a consequential damage limitation.

## B. *Failure of the Limited Remedy*

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, *remedy may be had as provided in this Title.*" Wash.Rev.Code § 62A.2–719(2) (1983) (emphasis added). "Unreasonable delays in repairing or inability to adequately repair a product" may cause "a limited remedy 'to fail of its essential purpose.'" *Lidstrand v. Silvercrest Indus.*, 28 Wash.App. 359, 365, 623 P.2d 710, 714 (1981) (quoting *Ehlers v. Chrysler Motor Corp.*, 88 S.D. 612, 619, 226 N.W.2d 157, 161 (1975)). For purposes of Selas' summary judgment motion, we must assume the limited remedy failed of its essential purpose.

The issue becomes whether the separate limitation on consequential damages remains enforceable. The Washington courts have yet to confront a situation in which a party seeks to enforce a consequential damages limitation in the face of a limited repair or replacement remedy which has failed. *See Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984) (predicting Washington law in analogous situation). We must predict how Washington's "highest court would decide

[this] case." *Id.* (quoting *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir.1980)).

The district court did not have the benefit of *Fiorito* when it ruled on Selas' summary judgment motion. Indeed, when faced with an analogous situation, the Sixth Circuit, applying Washington law, held that the only limit on a separate consequential damage limitation was unconscionability, manifested by "grossly unequal bargaining power at the time of [contract] formation." *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir.1983).

However, in *Fiorito*, we rejected this reasoning and found Wash.Rev.Code § 62A.2–719(2) (1983) to be an independent limit on "contractual arrangements [such as consequential damage limitations] which *become oppressive by change of circumstances.*" *Fiorito*, 747 F.2d at 1315 (emphasis added) (quoting Official Washington Comments to § 2–719).

In *Fiorito* we predicted that Washington courts would adopt a case by case approach and examine the provisions of "each contract" to determine whether the parties intended the exclusive remedy and damage exclusion provisions to operate as "separable elements of risk allocation" or as inseparable parts of a comprehensive risk allocation package. *Id.* (quoting the district court opinion); *accord S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1375 (9th Cir.1978) (California law requires case by case examination to determine whether "[t]he default of the seller is ... so total and fundamental as to require that its consequential damage limitation be expunged from the contract.")

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy. (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title. (3) Limitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use or of any services related thereto is invalid unless it is proved that the limita-

tion is not unconscionable. Limitation of remedy to repair or replacement of defective parts or non-conforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations.

Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable.

■ In light of *Fiorito,* summary judgment here was inappropriate. Only after all of the circumstances surrounding the negotiation and performance of the contract have been determined at trial can the enforceability of the consequential damages limitation be determined. For instance, its enforceability necessarily depends on whether and the extent to which Selas breached its warranty obligations. These facts are hotly disputed.

## III. *Judgment for Purchase Price*

### A. *Delivery Bonus*

The district court concluded erroneously that Selas conceded its failure to meet the delivery date necessary to earn the bonus. It conceded only that this issue may involve disputed facts. Milgard concedes that entitlement to the bonus should be determined after trial.

### B. *Accord and Satisfaction*

Accord and satisfaction depends upon "a meeting of the minds" leading to "an intention by both parties to satisfy ... prior obligation[s] by performance of the new." *Plywood Marketing Assoc. v. Astoria Plywood Corp.,* 16 Wash.App. 566, 574, 558 P.2d 283, 289 (1976). "The key element of accord and satisfaction is the intention of the parties, which as a rule presents a question of fact." *Black v. Denver United States Nat. Bank,* 362 F.2d 38, 41 (8th Cir.), *cert. denied,* 385 U.S. 990, 87 S.Ct. 596, 17 L.Ed.2d 450 (1966).

■ Whether and the extent to which the parties reached an accord and satisfaction when the first suit was dropped turns on numerous factual disputes. The court must determine what was agreed upon and whether Selas complied with its agreement. Determination of this issue requires a trial.

### C. *Set Off*

Summary judgment denying Milgard the opportunity to set off at least compensatory damages against the unpaid purchase price was inappropriate.

■ The failure of Selas' limited remedy rendered other remedies available. Wash. Rev.Code § 62A.2–719(2) (1983). The court found that Milgard properly notified Selas pursuant to Wash.Rev.Code § 62A.2–717 (1983). At a minimum, Milgard was entitled to the difference between the value of the furnace as accepted and the value as warranted. Wash.Rev.Code § 62A.2–714 (1983).[5]

■ Selas argues that Milgard somehow waived its right to pursue compensatory damages. Milgard's complaint asked for "past and future damages for breach of express and implied warranties." Compensatory damages were sufficiently pleaded. *See* Fed.R.Civ.P. 8(a). Milgard defended its right to set off in its Memorandum in Opposition to Selas' Summary Judgment Motion. The issue was not waived.

## IV. *Attorneys' Fees*

The district court awarded Selas attorneys' fees as the prevailing party under § 28.1(f) of the contract which provided attorneys' fees "in connection with the enforcement of Selas' rights as a secured party." However, the amount awarded excluded compensation for time spent by Selas' in-house counsel actively litigating this case and Selas cross-appealed.

Determination of whether Selas ultimately prevails must await trial on the merits

---

**5.** Section 62A.2–714 provides:

**Buyer's damages for breach in regard to accepted goods**

(1) Where the buyer has accepted goods and given notification (subsection (3) of RCW 62A.2–607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered.

and the attorneys' fees issue is not now before us. However, we would hesitate to adopt a per se rule, as the district court did, and bar attorneys' fees awards for in-house counsel whenever fees are authorized by contract.

The proliferation of in-house counsel is a matter of general knowledge. *See, e.g.,* Quade, *Corporations Hunt Ways to Cut Legal Costs,* 68 A.B.A.J. 523–525 (May 1982). To predict Washington law the district court on remand should examine the modern trend toward providing reasonable fees based on the market rate when "a party is represented by both private counsel and in-house counsel who actively participate in the preparation of the case." *B–E–C–K Constructors v. State Dept. of Hwys.,* 604 P.2d 578, 585 (Alaska 1979). *See also, e.g., In re Great Northern Iron Ore Properties,* 311 N.W.2d 488, 493 (Minn.1981); *Dale Electronics, Inc. v. Federal Ins. Co.,* 205 Neb. 115, 286 N.W.2d 437, 443 (1979); *Lacer v. Navajo County,* 141 Ariz. 392, 687 P.2d 400, 404 (Ariz.App. 1984) (actual costs plus overhead for government attorney staff). *But see Burger King Corp. v. Mason,* 710 F.2d 1480, 1499 & n. 13 (11th Cir.1983) (dictum implied all attorneys' fees clauses under Florida law are indemnification provisions and do not include payment for in-house counsel expenses), *cert. denied,* — U.S. ——, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). Of course, if in-house counsel are not actively participating (e.g., acting only as liaison), fees should not be awarded. *See Burger King,* 710 F.2d at 1498–99.

CONCLUSION

Summary judgment for Selas was improvidently granted. A trial is necessary to resolve the factual disputes surrounding Selas' obligations and performance under the purchase contract, and whether and the extent to which the parties settled their dispute through an "accord and satisfaction." Only then can the court determine the enforceability of the limit on consequential damages and whether Milgard is entitled to damages.

The award of attorneys' fees is vacated and remanded for determination of the prevailing party after further proceedings. The parties will bear their own costs on this appeal.

REVERSED AND REMANDED.